IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC S. ZALL,

                Plaintiff,

    v.

STANDARD INSURANCE COMPANY,

                Defendant.

OPINION AND ORDER

21-cv-19-slc

---

In October 2013, plaintiff Eric Zall, a dentist, filed a claim for long-term disability insurance (LTD) benefits from his insurer, Standard Insurance Company. Zall, asserts that he no longer can perform the essential functions of his job because of chronic neck pain and right-handed numbness and weakness resulting from a cervical disc herniation and radiculopathy. Standard initially denied the claim but later reversed itself and found Dr. Zall eligible for LTD as of November 1, 2013, and it paid him benefits for the next six years. Then Standard reversed itself again: in December 2019 Standard advised Dr. Zall that it was terminating his benefits under the policy's Other Limited Conditions provision, which limits payment of LTD benefits to 24 months if the disabling condition is caused by, among other things, "diseases or disorders of the cervical . . . back and its surrounding soft tissue." Dr. Zall contested the denial, asserting that his disabling condition is caused by cervical disc herniation and radiculopathy, which are excluded from the Other Limited Conditions limitation. Standard disagreed and refused to reinstate his LTD benefits, although it let Dr. Zall keep the benefits it says it had overpaid from 2015 to the end of 2019.

Dr. Zall now brings this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), challenging Standard's decision to terminate his benefits under the policy's Limited Conditions limitation. The parties have filed cross-motions

for summary judgment.[1]  As explained below, I find that the claims administrator fully and fairly reviewed all of the evidence related to Dr. Zall's claim and came to the rational conclusion that Dr. Zall's disabling condition was not one for which long term disability was available under the policy.  Accordingly, I am granting Standard's motion, denying Dr. Zall's motion, and entering judgment for defendant.

The following facts, which are drawn from the Administrative Record ("AR"), dkt. 13, are undisputed.[2]

UNDISPUTED FACTS

**I.  Background**

Plaintiff Eric Zall co-owned a dental practice, Falls Dental Associates, S.C., which offered disability insurance to its employees under a group insurance policy issued by defendant Standard Insurance Company.  The policy is governed by the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").  Zall, a dentist, obtained coverage under the policy.

To show a disability under the Group Policy, a claimant must establish that he is "unable to perform with reasonable continuity the Material Duties of your Own Occupation."  The Policy includes a provision, "Disabilities Subject to Limited Pay Periods," which states:

> Payment of LTD Benefits is limited to 24 months during your entire lifetime for a Disability caused or contributed to by any one or more of the following, or medical or surgical treatment of one or more of the following  . . . Other Limited Conditions.

---

[1] Although Standard has styled its motion as a Motion for Judgment on the Administrative Record, *see* dkt. 17, I have construed it as a motion for summary judgment.

[2] In citing to the Administrative Record, I have used Standard's numbering, found at the bottom of each page.

Other Limited Conditions include:  chronic pain conditions; chronic fatigue conditions; "carpal tunnel or repetitive motion syndrome;" "arthritis, diseases or disorders of the cervical, thoracic, or lumbosacral back and its surrounding soft tissue;" and sprains or strains of joints or muscles. As relevant to this case, Other Limited Conditions do *not* include: (1) "herniated discs with neurological abnormalities that are documented by electromyogram and computerized tomography or magnetic resonance imaging;" or (2) "radiculopathies that are documented by electromyogram."

The Group Policy further provides that if a claimant is eligible for LTD benefits as a result of an Other Limited Condition, then no benefits are payable after 24 months unless the claimant "continue[s] to be Disabled as a result of a Physical disease, Injury, or Pregnancy for which payment of LTD Benefits is not limited."  The claimant bears the burden to show Proof of Loss, that is, "written proof that you are Disabled and entitled to LTD Benefits."  Finally, the policy confers to Standard "full and exclusive authority" to interpret the Policy and decide all matters arising thereunder, and specifies that Standard's exercise of that authority shall be "conclusive and binding."

## II.  Standard Approves Dr. Zall's Claim for LTD Benefits

Dr. Zall applied for disability benefits under the Group Policy on October 18, 2013, at the age of 48.  Dr. Zall indicated he could no longer work as a dentist because of pain and numbness in his neck and in his thumb and two fingers in his right hand.  Medical records showed that he began having neck pain and arm numbness around 2011, for which he was

evaluated by Dr. Stephen Robbins, an orthopedic surgeon.  AR 1405.  An MRI in 2011 showed

a disc herniation at C5-C6 that was contributing to severe foraminal narrowing.  AR 1406-07.

On October 25, 2013, Dr. Zall saw Dr. Robbins for intermittent episodes of neck pain

radiating into his right arm.  Dr. Robbins noted that Dr. Zall had occasional episodes of

numbness and tingling in his fingers that were affecting his job as a dentist:  the numbness had

caused him to drop an instrument in a patient's mouth and decline to perform some dental

procedures.  Dr. Zall had a positive Spurling's test[3], but had full cervical spine range of motion,

5/5 strength in all upper extremity muscle groups, and normal deep tendon reflexes.  Dr. Robbins

found that Dr. Zall's symptoms were consistent with a diagnosis of a herniated disc with

intermittent radiculopathy.  He said Dr. Zall had noted significant improvement of his

symptoms but he "does have some residuals," that he should continue with his exercise program

and continue employment as tolerated.  Dr. Robbins noted that Dr. Zall might need to consider

disability if he had ongoing symptoms, but that no further studies were needed at that time.  AR

1404.

Eleven days later, Dr. Robbins signed an Attending Physician's Statement in support of

Dr. Zall's claim for benefits under the Group Policy, stating that Dr. Zall was unable to work as

of November 5, 2013.  AR 1516-17.

On February 14, 2014, Dr. Zall saw Dr. Robbins.  Dr. Zall complained of a three-week

history of pain along his right elbow, but said it had improved with physical therapy.  Dr. Zall

denied any radicular pain, numbness, tingling or weakness in the right arm, and the doctor noted

that Dr. Zall's strength and reflexes were normal.  Dr. Robbins diagnosed right lateral

---

[3] The Spurling test is a medical maneuver used to assess nerve root pain (also known as radicular pain).  https://en.wikipedia.org/wiki/Spurling%27s_test (Nov. 19, 2021).

epicondylitis, *a.k.a.* "tennis elbow," and recommended an electromyography (EMG) study if Dr. Zall's symptoms worsened, but he saw no evidence of radiculopathy at that time.

On March 10, 2014, Standard denied Dr. Zall's claim for LTD.  Dr. Zall appealed, providing additional supporting documentation.  Dr. Zall's additional evidence included a functional capacity evaluation (FCE) that he underwent on April 29, 2014.  At the FCE, Dr. Zall stated that he had diminished dexterity in his right hand and numbness and tingling in his right arm after a few minutes of maintaining his arm in a static position.  The FCE included photographs of Dr. Zall depicting the "simulated dental procedure position" that he said caused right hand numbness.

According to the FCE, Dr. Zall was "only able to tolerate the elevated arm positions in sitting required to perform dental work for 2 minutes before numbness began in his right lateral three finger tips," affecting his dexterity and causing him to drop objects.  AR 1431-1465.

Standard consulted with Kenneth Kopacz, M.D., a board certified orthopedic surgeon. Kopacz reviewed the evidence and determined that Dr. Zall had limitations on fingering and hand dexterity resulting from his spinal condition that would interfere with his ability to perform fine motor skills, and in turn, preclude him from working as a dentist.  AR 1374-1378.  Kopacz noted, however, that Dr. Zall had not undergone any recent MRI studies or treatment, and that he might be a candidate for injections or even surgical decompression.  AR 1377.  Based on Kopacz's report, Standard approved and began paying Dr. Zall's claim on November 19, 2014, with a disability onset date of November 1, 2013.

**III. Standard Reviews Dr. Zall's Eligibility and Eventually Terminates his LTD Benefits**

In August 2015, Standard initiated a review of Dr. Zall's file to determine if he was eligible for continuing LTD benefits.  Dr. John Hart, a physical medicine and rehabilitation specialist, reviewed and summarized Dr. Zall's medical records up to that point.  AR 1310-14.  Dr. Hart noted some observations that were inconsistent with a diagnosis of cervical radiculopathy, including 2014 office visit notes from Dr. Robbins stating that Dr. Zall was denying radicular pain and that his symptoms were "not suggestive of radiculopathy."  AR 1312, 1401.  In addition, Dr. Hart reviewed the FCE photographs depicting the positioning said to bring on Dr. Zall's symptoms.  Hart found them inconsistent with cervical radiculopathy insofar as elevating the arms tended to decrease, rather than increase, the symptoms in a person with that condition.  AR 1313.

Standard consulted another board-certified physician in physical medicine and rehabilitation, Dr. Hans Carlson, who prepared a report on November 23, 2015.  AR 1295-1298.  Noting that Dr. Zall consistently presented at exams without focal neurologic deficits and with intact strength and reflexes, Dr. Carlson opined that Dr. Zall's symptoms and examination findings were most consistent with cervical radiculitis.  He explained that radiculitis was a "disease or disorder of the cervical, thoracic, lumbosacral back and surrounding soft tissues and sprain or strain of joint or muscle without focal neurologic deficits," which would fall under the Group Policy's definition of an "Other Limited Condition" for which benefits were capped at 24 months.  AR 1297.  Both Carlson and Hart noted that Dr. Zall's medical records referred to Dr. Zall having recently undergone an EMG study and an updated MRI which might shed light on the question of radiculopathy, but neither study was in Standard's file.  AR 1297, 1313.

6

For reasons that are unclear, Standard continued to pay benefits to Dr. Zall for the next several years without reaching a determination whether his claim was limited by the Group Policy's provision for Other Limited Conditions.

In June 2018, Standard revived its review of Dr. Zall's claim, seeking updated information to determine Dr. Zall's functional abilities and whether his disability claim was limited by Other Limited Conditions. Among other things, Standard wanted to review the updated MRI and EMG that it had apparently failed to obtain when it reviewed Dr. Zall's file in 2015. Standard was eventually able to obtain those studies, which had been conducted in November 2014 and December 2014, respectively.

The 2014 EMG had been administered by Dr. Trinh Truong, who noted that it showed "muscle membrane irritability and reinnervation changes found in the distribution of the right C7 root, consistent with radiculopathy." AR 1273. He further noted his impression that the EMG was "consistent with neuralgia, neuritis, and radiculitis, unspecified," with a severity level of "moderate." In his summary, Dr. Truong concluded that there was "electrodiagnostic evidence for a chronic active right C7 radiculopathy" and for mild carpal tunnel syndrome on the right. AR 1273, 1290.

The MRI scan, which had been performed on November 24, 2014, documented multilevel disc disease in Dr. Zall's cervical spine, most significantly at C5-C6. More specifically, the MRI noted a "shallow disc herniation or bulge" at C4-C5 and moderate to severe narrowing of the foramen on the right at C5-6 and C6-C7. AR 1283-85.

In addition to the 2014 EMG and MRI studies, Standard obtained Dr. Zall's medical records from 2014-2019. These records showed that he had not seen any doctor for nearly three

years between March 2016 and February 27, 2019, nor had he undergone any more objective

testing or imaging.  From the time Standard approved Dr. Zall's claim for LTD in November

2014 until the end of September 2019, Dr. Zall had seen a doctor–Dr. Robbins–four times: on

April 15, 2015; March 2, 2016; February 27, 2019; and September 27, 2019.  AR 1252, 1260,

1280, 1350.  At every one of those visits, Dr. Robbins found that Dr. Zall had 5/5 strength in

his upper extremities, normal reflexes, and nearly full if not full range of motion in his neck.

Although Dr. Zall reported some numbness and occasional neck pain, he denied any weakness

or radicular pain in his arms.  AR 1252, 1260, 1280.  In his note from Dr. Zall's September 27,

2019 office visit, Dr. Robbins wrote that Dr. Zall  "probably has a diagnosis of degenerative disk

disease with cervical radiculitis that has resolved.  He has had a history of right arm pain,

numbness and tingling, but this was his worst episode.  At the present time, the symptoms have

primarily resolved and he does not have any significant residuals."  AR 1252.

Standard provided Dr. Zall's medical records and reports to Dr. Natalie Boodin, a

physical and rehabilitation medicine specialist.  In a report dated December 6, 2019, Dr. Boodin

opined that degenerative disc disease was the only condition causing functional limitations for

Zall.  AR 1241-1247.  Dr. Boodin did not find support in the medical records for any herniated

discs.  She further noted that although the 2014 EMG showed a chronic C7 radiculopathy, she

was not persuaded that it was causing any restrictions or limitations, noting that Dr. Zall's

physical exams all showed full strength, normal reflexes, and only slightly decreased cervical

range of motion.  Thus, Dr. Boodin concluded that Dr. Zall's reported limitations were most

likely due to cervical degenerative disc disease rather than cervical radiculopathy.

Based on Dr. Boodin's opinion, Standard determined that Dr. Zall was no longer entitled to LTD payments because degenerative disc disease is an "Other Limited Condition" under the Policy for which disability benefits are not available after 24 months.  AR 1548.  Although this meant that Dr. Zall's benefits should have terminated in December 2015, Standard did not seek recovery from Dr. Zall of the four years of overpaid benefits because "the Limit review had not been completed previously."  AR 500, 1548.  Standard notified Dr. Zall of its determination by letter dated December 27, 2019, and advised him of his right to administrative review.  AR 498-502.

## IV.  Dr. Zall Appeals

Dr. Zall appealed, submitting letters from Drs. Truong and Robbins in support.  In a letter dated April 23, 2020, Dr. Truong wrote:

> Mr. Zall had documented chronic right C7 radiculopathy based on my electrodiagnostic study performed on 12-12-2014.  MR scan was evaluated and showed C56 C67 disk herniation with mild cord impingement.  Additionally, he also had concurrent right carpal tunnel syndrome (median nerve entrapment at the wrist).  Based on the above findings, I think that it is unlikely that he is capable of working full-time as a dentist due to lack of dexterity which would make it unsafe for him to operate a surgical instrument.

> AR 57.

In a letter dated April 2, 2020, Dr. Robbins wrote that Dr. Zall had degenerative disc disease with severe foraminal narrowing at C5-6, C6-7 with a herniated disc at C6-7 resulting in C7 radiculopathy.  AR 77.  Robbins wrote that: (1)  Dr. Zall had increasing right arm pain and tingling into his right hand and fingers; (2) his symptoms were "chronic and progressive"; (3) the symptoms interfered with his ability to safely function as a dentist; and (4) Dr. Zall

continued to have such symptoms with activities and extended standing and repetitive use of his right arm and right fingers.  Dr. Robbins further explained that when he wrote on September 27, 2019 that Dr. Zall's symptoms had "primarily resolved" and Dr. Zall was no longer having any significant residuals, Dr. Robbins was describing a recent "flare up" that Dr. Zall was having, not his "ongoing C7 radiculapathy [sic]."  *Id*.

Standard consulted with Michelle Alpert, M.D., who is board-certified in physical medicine and rehabilitation with additional expertise in spinal cord injuries.  Dr. Alpert analyzed the medical evidence, conferred with Dr. Robbins, and prepared a written report, dated August 3, 2020.  AR 61-65.  Dr. Alpert found that the medical record supported a finding that Dr. Zall had degenerative disc disease of the cervical spine, chronic neck pain, right shoulder pain and numbness in the right hand, but that as of January 2020, there was no support for diagnoses of either cervical radiculopathy or a cervical herniated disc with neurologic abnormalities.  Dr. Alpert noted that the 2014 MRI showed foraminal narrowing, not a herniated disc or nerve root impingement, and Dr. Zall did not have the expected sensory, reflex, or motor loss that one would expect if he "truly had the neurologic abnormalities consistent with C7 radiculopathy." AR 64.

Dr. Alpert further opined that the numbness Dr. Zall described in his thumb and first three fingers could be due to carpal tunnel, evidence of which was noted on the 2014 EMG and nerve conduction study.

On August 29, 2020, Standard notified Dr. Zall that it was upholding its decision to close his LTD claim.  Standard explained that it had found that Dr. Zall was disabled from his occupation as a dentist due to cervical degenerative disc disease and also potentially from carpal

10

tunnel syndrome, both of which were Other Limited Conditions for which LTD benefits were limited to a period of 24 months.  AR 483-87.  Dr. Zall then filed this suit.

## OPINION

Because Dr. Zall seeks to enforce benefits under the policy, he bears the burden of proving his entitlement to contract benefits.  *Ruttenberg v. U.S. Life Ins. Co.*, 413 F.3d 652, 663 (7th Cir. 2005).  Although an insurer like Standard has the burden of proving an exclusion applies—here, the "Other Limited Conditions" provision—the insured, in turn, has the burden of proving that an exception to the exclusion restores coverage.  *Zaccone v. Standard Life Ins. Co.*, 36 F. Supp. 3d 781, 783 (N.D. Ill. 2014) (citing *Santa's Best Craft, LLC v. St. Paul Fire and Marine Ins. Co.*, 611 F.3d 339, 347 (7th Cir. 2010)).

To be entitled to disability benefits for more than 24 months, Dr. Zall had to prove two things: First, he had to show that he has a condition that satisfies the Group Policy's exception to Other Limited Conditions.  As described above, Dr. Zall contends that he has one of the following excepted conditions:

> (1) "herniated discs with neurological abnormalities that are documented by electromyogram and computerized tomography or magnetic resonance imaging;" or

> (2) "radiculopathies that are documented by electromyogram."

Second, Dr. Zall had to show that he is unable to perform the material duties of his occupation as a dentist because of one of these conditions, separate from any Other Limited Condition.  *Dutkewych v. Standard Ins. Co.*, 636 F. 3d 623, 636 (1st Cir 2015).

The parties agree that this court must review Standard's decision to terminate Dr. Zall's LTD benefits under the "arbitrary and capricious" standard.  *See, e.g., Cerentano v. UMWA Health*

11

& *Ret. Funds*, 735 F.3d 976, 981 (7th Cir. 2013) (when plan grants administrator discretionary authority to determine eligibility for benefits, court asks only whether administrator's decision was arbitrary and capricious).  Under the arbitrary and capricious standard, a reviewing court overturns the decision only where there is an absence of reasoning to support it.  *Jackman Fin. Corp. v. Humana Ins. Co.*, 641 F.3d 860, 864 (7th Cir. 2011) (citations omitted). The decision will be overturned only if it is "downright unreasonable." *Tegtmeier v. Midwest Operating Engineers Pension Tr. Fund*, 390 F.3d 1040, 1045 (7th Cir. 2004) (quoting *Carr v. Gates Health Care Plan*, 195 F.3d 292, 295 (7th Cir. 1999)). *See also Cozzie v. Metro. Life Ins. Co.*, 140 F.3d 1104, 1107–08 (7th Cir. 1998) ("Review under this standard is extremely deferential and has been described as the least demanding form of judicial review . . . It is not, however, without some teeth.")  This standard may be met if the plan administrator fails to provide the claimant with a "full and fair" review of his claim, for example, by "ignoring" or "dismissing out of hand" favorable evidence submitted by the claimant.  *Majeski v. Met. Life Ins. Co.*, 590 F.3d 478, 484 (7th Cir. 2009).

Dr. Zall argues that Standard's decision to terminate his LTD benefits under the Other Limited Conditions provision was arbitrary and capricious because:  (1) Standard denied him a full and fair review by failing to provide him a copy of Dr. Alpert's report or the opportunity to respond to it before terminating his benefits; (2) Standard's conclusion that Dr. Zall does not have either cervical radiculopathy or cervical herniated disc with neurological abnormalities is not rationally supported by the medical evidence; and (3) Standard waived its right to terminate his benefits by paying him benefits for more than six years after it now says his benefits should have ended.  As discussed below, none of these arguments is persuasive.

## I.  Dr. Alpert's Report

Dr. Zall argues that Standard denied him a "full and fair review" because it did not offer him a meaningful opportunity to respond to Dr. Alpert's report before denying his appeal.  In support of this argument, he cites new claims-procedure regulations promulgated by the Department of Labor that went into effect on January 18, 2017.  *Claims Procedure for Plans Providing Disability Benefits*, 81 FR 92316-01, 2016 WL 7326455 (Dec. 19, 2016).  Under the new rules, the claims administrator of an employee benefit plan providing disability benefits must produce to the claimant documents developed or considered during the administrative appeal before rendering its final determination.  29 C.F.R. § 2560.503-1(h)(4)(2018).

However, as Standard points out, the new rules apply to "claims for disability benefits filed under a plan after April 1, 2018."  20 C.F.R. § 2560.503-1(p)(3)(2018); *Smith v. Hartford Life & Accident Ins. Co.*, 421 F. Supp. 3d 416, 419 (E.D. Ky. 2019)(new rules apply to claims filed after April 1, 2018).  As the rule explains, "a claim for benefits is a request for a plan benefit or benefits made by a claimant in accordance with a plan's reasonable procedure for filing benefit claims."  29 C.F.R. § 2560.503-1(e)(2018).  Dr. Zall filed his claim for disability benefits in October 2013.

In a footnote, Dr. Zall declares without support that the new rules apply to Dr. Alpert's peer review issued on August 3, 2020, *see* Br. in Supp., dkt. 15, at n.4.  Nothing in the regulations suggests that a continuing eligibility review is a "request for a plan benefit made by a claimant[.]"  Accordingly, I conclude that the new claims procedures do not govern Dr. Zall's claim.  *Accord Mayer v. Ringler Assocs. Inc.*, 9 F.4th 78, 86 (2d Cir. 2021) (amendments to ERISA rules effective in 2018 do not apply to claims filed before 2018); *Smith*, 421 F. Supp. at 420 ("Smith may have contested Continental and Hartford's handling of her [LTD] claim over the

past eighteen years, but she has made no new 'claim for benefits' for the purposes of § 2560.503-1.").

Dr. Zall does not argue that he was denied a full and fair review under the version of 29 C.F.R. § 2560.503-1(h)(4) that was in effect at the time he filed his claim.  Circuit courts reviewing this prior version have uniformly held that it did "*not* require the claims administrator to produce documents developed or considered during the administrative appeal before rendering its final determination." *Mayer*, 9 F.4th at 86 (emphasis added) (following *Pettaway v. Teachers Ins. & Annuity Ass'n of Am.*, 644 F.3d 427, 436-37 (D.C. Cir. 2011); *Midgett v. Wash. Grp. Int'l Long Term Disability Plan*, 561 F.3d 887, 895-96 (8th Cir. 2009); *Glazer v. Reliance Standard Life Ins. Co.*, 524 F.3d 1241, 1245-46, (11th Cir. 2008); *Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1166-67 (10th Cir. 2007); *see also Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 310-11 (5th Cir. 2015); *Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 502 (6th Cir. 2010); *Morningred v. Delta Family-Care & Survivorship Plan*, 526 F. App'x 217, 221 n.9 (3d Cir. 2013).  Dr. Zall cites *Hughes v. Hartford Life & Accident Ins. Co.*, 368 F. Supp. 3d 386, 401–02 (D. Conn. 2019), which held to the contrary, but as Standard points out, that case is no longer good law after the Second Circuit's decision in *Mayer*.  Absent any other argument from Dr. Zall as to why I should deviate from the clear weight of circuit authority, I decline to do so.  Under this authority, Standard was not obliged to produce Dr. Alpert's report to Dr. Zall before issuing its final decision, so his claim that he was denied a "full and fair review" fails.

## II. Reasonableness of Standard's Conclusion

Turning to the substance of Standard's decision, Dr. Zall argues that he produced sufficient evidence to show his limitations result from conditions that are excepted from the Other Limited Conditions limitation under the Group Policy, and that Standard's conclusion to the contrary is arbitrary and capricious. I address each exception in turn:

### A. Herniated Disc With Neurological Abnormalities

To satisfy the Group Policy's exception for herniated disc, Dr. Zall was required to prove that, as of December 31, 2019, when his claim closed, he had a herniated disc with neurological abnormalities (1) documented by an EMG, and (2) documented by either MRI or CT. There is no dispute that Dr. Zall never had a CT scan. Dr. Zall argues, however, that his 2011 and 2014 MRIs "confirmed a cervical disc herniation," and that Dr. Truong's EMG study in 2014 provides the requisite EMG evidence.

Dr. Zall's evidence fails to show that Standard unreasonably determined that Dr. Zall did not qualify for the "herniated disc" exception. First, as Standard points out, although the 2011 MRI showed a herniated disc at C5-C6, the most recent MRI from 2014 shows no herniated disc at any level. Instead, it identified "multilevel degenerative disc disease," *i.e.* a "disease or disorder of the cervical spine," which under the Group Policy is a Limited Condition that limits payment of benefits to a 24-month period. Although Dr. Zall's doctors, Dr. Truong and Dr. Robbins, stated in letters that Dr. Zall had herniated discs at C5-C6 and C6-C7, Standard's consulting physicians, Dr. Boodin and Dr. Alpert, concluded otherwise after reviewing the 2014 MRI. Standard was entitled to credit the opinions of its consulting physicians over Dr. Zall's treating physicians so long as Standard's choice was "rationally supported by record evidence." *Black v.*

15

*Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009).  The 2014 MRI report, which does not identify any herniated discs, provides rational support for the consulting physicians' conclusions.

Dr. Zall insists that the required MRI evidence of a herniated disc is established by the 2014 MRI's finding of a "shallow disc herniation or bulge" at C4-C5.  Although Standard asserts that Dr. Zall waived this claim by failing to raise it during the administrative proceedings, it is unnecessary to consider waiver because the claim fails regardless.  First, both Drs. Truong and Robbins said Dr. Zall had a herniated disk at the C5-C7 level, not at C4-C5.  Second, as Standard points out, Dr. Zall had to show a herniated disc "with neurological abnormalities."  Dr. Zall points to his 2014 EMG as providing the requisite positive results, but the EMG study did not document any neurological abnormalities at C4-C5, only at C7.  In other words, even assuming Dr. Zall has a herniated rather than a bulging disc at C4-C5[4], he cannot mix and

---

[4] As another court has explained:

It is critical to note that a bulging disc is not the same as a herniated disc. Bulging discs are more common, while herniated discs are more likely to cause pain. According to the Mayo Clinic's website:

A bulging disk extends outside the space it should normally occupy. The bulge typically affects a large portion of the disk, so it may look a little like a hamburger that's too big for its bun. The part of the disk that's bulging is typically the tough outer layer of cartilage. Usually bulging is considered part of the normal aging process of the disk and is common to see on MRIs of people in almost every age group.

A herniated disk, on the other hand, results when a crack in the tough outer layer of cartilage allows some of the softer inner cartilage to protrude out of the disk. The protrusion of inner cartilage in a herniated disk usually happens in one distinct area of the disk and not along a large component of the disk, which is more typical of a bulging disk. Herniated disks are also called ruptured disks or slipped disks.

*Zaccone v. Standard Life Ins. Co.*, 36 F. Supp. 3d 781, 797 (N.D. Ill. 2014) (quoting http://www.mayoclinic.org/diseases-conditions/herniated-disk/expert-answers/ bulging-disk/faq-20058428).

match:  he had to "show positive electromyogram results to go along with the MRI results and diagnosis in order to avoid the policy limitation" for herniated disc.  *Wilcox v. Standard Ins. Co.*, 340 F. Supp. 2d 1266, 1283 (N.D. Ala. 2004) (addressing same policy language).  Dr. Zall's EMG does not document a neurologic abnormality at C4-C5.  Accordingly, Standard reasonably determined that he failed to satisfy the Group Policy's requirements for a herniated disc at C4-5 with neurological abnormalities documented by EMG.

### B.  Radiculopathy Documented by EMG

Dr. Zall has a stronger argument that he meets the exception to the Other Limited Conditions limitation for "radiculopathies documented by electromyelogram."  His contention is supported by the 2014 EMG study, which Dr. Truong found was consistent with an active, chronic radiculopathy at C7.  Standard agues, however, that this evidence was insufficient to show that Dr. Zall was still suffering from an active radiculopathy five years later when Standard terminated Dr. Zall's LTD benefits, much less that it was disabling.

The administrative record provides ample support for Standard's conclusion that Dr. Zall was not disabled by radiculopathy in December 2019:

> (1) The EMG did not show any ongoing "denervation," which would evidence nerve dysfunction, but instead showed "reinnervation," which suggests restoration of nerve function;

> (2) As noted by Drs. Boodin and Alpert, Dr. Zall consistently was found to have no motor loss, sensory changes or diminished reflexes, which one would expect if Dr. Zall had an active C7 radiculopathy; instead, his examining doctors consistently found he had 5/5 strength in all of his upper extremity muscle groups, intact reflexes, no clinical evidence of nerve damage, only intermittent slightly decreased cervical range of motion, and little to no complaints of radicular pain;

(3) As Dr. Alpert observed, the 2014 MRI did not document any cervical nerve root impingement at C7 or any other level, which would be the usual finding seen in cervical radiculopathy;

(4) Dr. Hart opined that the raised arm and neck positions depicted on the FCE photographs that Dr. Zall said brought on his symptoms of pain and numbness were not consistent with radiculopathy; and

(5) Dr. Carlson found that Dr. Zall's examination findings were consistent with cervical radiculitis, which is an Other Limiting Condition.

Dr. Zall fails to show that Standard did not reasonably rely on this evidence or that it dismissed any of his supporting evidence out-of-hand in arriving at its decision to terminate his LTD benefits.

Dr. Zall argues Standard should have given more weight to the conclusions of his treating physicians, Dr. Truong and Dr. Robbins, who both diagnosed him with cervical radiculopathy, instead of those of its consulting physicians.  However, the deferential standard of review requires that this court accept "[the administrator's] choice between competing medical opinions so long as it is rationally supported by record evidence." *Becker v. Chrysler LLC Health Care Benefits Plan*, 691 F.3d 879, 889 (7th Cir. 2012) (quoting *Black v. Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009)).  Here, the record provides rational support for Standard's decision.  Notably, both Dr. Robbins and Dr. Truong said that Dr. Zall had herniated disks at C5-C7, but the 2014 MRI showed otherwise.  Moreover, as Standard's physicians explained, neither physician documented any of the physical findings that one would expect to find if Dr. Zall truly had symptomatic radiculopathy.  Finally, as Standard points out, neither Dr. Robbins nor Dr. Truong suggested that Dr. Zall's reported bouts of tingling and numbness in his fingers

could *not* be caused by his degenerative disc disease or carpal tunnel syndrome.[5]   A claims administrator does not act arbitrarily or capriciously when it rejects a treating physician's opinion that conflicts with the available objective evidence or is otherwise unreliable.  *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Dr. Zall next argues that Standard unreasonably relied on Dr. Boodin's opinion because she based it solely on Dr. Robbins' September 27, 2019 note stating that Dr. Zall's radiculitis had "primarily resolved," pointing out that Dr. Robbins later clarified that he was referring to a recent flare and not Dr. Zall's baseline "C7 radiculopathy."  Dr. Zall has mischaracterized Dr. Boodin's opinion.  As her report makes clear, she relied not just on the clinical notes from Dr. Zall's September 27, 2019 visit with Dr. Robbins but on earlier exams as well, explaining that they "all showed full strength, normal reflexes, and only slightly decreased cervical ROM."  As she (and Standard's other doctors) explained, such examination findings were "not consistent with symptoms of a cervical radiculopathy."

Although Dr. Zall points to his positive Spurling's tests as objective clinical support for a finding of radiculopathy, the last positive Spurling's test was by Dr. Robbins in April 2015, more than four years before Standard closed his claim.  No positive Spurling's test was documented at Dr. Zall's subsequent exams by Dr. Robbins on March 2, 2016, February 27, 2019, or September 27, 2019, and Dr. Zall denied radicular pain at his visit with Dr. Robbins on September 27, 2019.  In any case, the mere existence of some contrary evidence does not show that Dr. Boodin's opinion was unreliable or that Standard acted unreasonably in relying

---

[5] In his brief, Dr. Zall asserts that "if he was disabled by cervical disc disease alone, then he would not be expected to exhibit upper extremity impairments, such as impaired dexterity, fine motor skills, and general ability to use his upper extremity." Dkt. 15, at 14.  However,  he fails to offer any medical support for this conclusion.

on it, particularly where three of its other consulting physicians agreed with her conclusion that the medical records did not support a finding of radiculopathy. "Raising debatable points does not entitle [the claimant] to a reversal under the arbitrary-and-capricious standard." *Sisto v. Ameritech Sickness and Accident Disability Benefit Plan*, 429 F.3d 698, 701 (7th Cir. 2005).

In another mischaracterization, Dr. Zall argues that Dr. Carlson, one of Standard's reviewing physicians, opined that he was disabled by radiculopathy. This is incorrect. As noted above, Dr. Carlson said no such thing: he said Dr. Zall's symptoms were consistent with *radiculitis*, and he further explained that radiculitis is an Other Limited Condition for disease or disorder of the spine. Contrary to Dr. Zall's unsupported suggestion, "radiculopathy and radiculitis are not interchangeable terms." *Marden v. Metro. Life Ins. Co.*, No. 1:11-CV-015, 2012 WL 2020931, at *12 (D.N.D. June 5, 2012) (citing Dorland's Illustrated Medical Dictionary 1405 (26th ed. 1988)). As the *Marden* court pointed out, radiculitis is an "inflammation" of a nerve root, while radiculopathy is a "disease" of the nerve root. *Id.* (citing *Dorland*'s.) Dr. Zall makes no argument that Standard misinterpreted the Group Policy in concluding that radiculitis was related to cervical DDD and thus an "Other Limited Condition" for which only 24 months of disability benefits were available.

Finally, Dr. Zall argues it was unreasonable for Standard to rely on Dr. Alpert's conclusion that Dr. Zall's numbness and tingling in his right hand "could" be caused by his confirmed carpal tunnel syndrome because her opinion was inconsistent with Dr. Zall's treatment records. I disagree. Dr. Truong's 2014 EMG and nerve conduction study provided objective support for a finding of carpal tunnel syndrome, and Dr. Zall does not deny that numbness, tingling, and weakness in the hand and arm are symptoms of that condition. *See*

https://www.mayoclinic.org/diseases-conditions/carpal-tunnel-syndrome/symptoms-causes/syc-20355603.  The mere fact that Dr. Robbins did not focus on that condition at any of the four visits by Dr. Zall in the four years after the EMG study does little to undercut Dr. Alpert's opinion.  After all, Dr. Zall was reporting few problems with his right arm during those visits.  In any event, Standard, in its denial letter upholding its decision to close Dr. Zall's claim, explained that it had found Dr. Zall disabled "due to his cervical spine condition" and also "potentially" because of carpal tunnel syndrome.  AR 486.  As noted previously, the record rationally supports the conclusion of Standard's experts that Dr. Zall's limitations were caused or contributed to by his cervical DDD (an Other Limited Condition) and not by any cervical radiculopathy, so the addition of carpal tunnel syndrome doesn't really matter.

In sum, it was neither arbitrary nor capricious for Standard to conclude that Dr. Zall's disability was caused or contributed to by degenerative disc disease or carpal tunnel syndrome and not by a herniated disc or cervical radiculopathy.  Standard had Dr. Zall's claim reviewed by four board-certified physicians, all of whom thoroughly considered all of the available information and none of whom found sufficient evidence to support a conclusion that Dr. Zall's disability was caused by an excepted condition independent of an Other Limiting Condition as defined in the policy.  Dr. Zall has not identified any significant evidence that Standard ignored, he merely disputes the conclusions reached by its experts.  Under the arbitrary and capricious standard, Standard's decision to accept the opinions of its own experts "prevails if it has rational support in the record."  *Semine v. Life Ins. Co. of North America*, 436 F.3d 805, 812 (7th Cir. 2006).  It does.  Accordingly, Standard is entitled to summary judgment in its favor.

## III. Waiver

Finally, Dr. Zall suggests that Standard waived its right to find that his claim was subject to the Other Limited Conditions limitation by paying him benefits for more than six years after the date Standard now asserts his benefits should have ended. This argument requires little discussion. "ERISA does not prohibit a plan administrator from performing a periodic review of a beneficiary's disability status." *Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 767 (7th Cir. 2010); *see also Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 832 (7th Cir. 2009) (the previous payment of benefits "does not create a presumptive burden for the plan to overcome."). Although the reasons for Standard's delay in reaching a final determination about Dr. Zall's claim are not clear, there is no evidence to suggest that it continued to pay Dr. Zall because it found that the Other Limited Conditions limitation did not apply. Instead, Dr. Zall's file seems to have fallen through the cracks from late 2015 until June 2018, when Standard renewed its pursuit of Dr. Zall's updated medical records. "A plan administrator is entitled to seek and consider new information and, in appropriate cases, to change its mind." *Holmstrom*, 615 F.3d at 767. As discussed above, the new information that Standard obtained indicated that Dr. Zall's disabling condition was subject to the Other Limited Conditions limitation, and Standard properly terminated his LTD benefits.

ORDER

IT IS ORDERED that:

1. Plaintiff Eric Zall's' motion for summary judgment, dkt. 14, is DENIED.

2. Defendant  Standard Life Insurance Company's motion for summary judgment, dkt. 17, is GRANTED.

3. The  clerk  of  court  is  directed  to enter judgment in favor of defendant and close this case.

Entered this 27th day of December, 2021.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge