IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ERIC S. ZALL,

                        Plaintiff,                         OPINION AND ORDER

        v.                                                   21-cv-19-slc

STANDARD INSURANCE COMPANY,

                        Defendant.

---

Eric Zall filed this action under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"), challenging Standard's decision to terminate his long term disability benefits. This court granted summary judgment to Standard. In January 2023, the Seventh Circuit Court of Appeals reversed, finding that Standard had violated Zall's right to a full and fair review by failing to provide Zall with a copy of a report prepared by Dr. Michelle Alpert, a consulting physician. *Zall v. Standard Ins. Co.*, 58 F.4th 284 (7th Cir. 2023). After remand, Standard reinstated Zall's benefits.

Zall now seeks an award of attorney's fees and costs under 29 U.S.C. § 1132(g)(1). Dkt. 35. Specifically, he seeks an award of $69,907.50 for attorney fees and $3,402.22 for costs. Standard opposes Zall's entitlement to fees and the amount sought.

As explained below, the court concludes that Zall is entitled to recover some, but not all, of his attorney fees and costs.

BACKGROUND

Zall worked for more than 20 years as a dentist. In 2013, he filed a claim for long-term disability benefits under an insurance policy with defendant Standard. Standard approved and paid his claim until December 2019, when it determined that further benefits were not payable

under the plan provision for Other Limited Conditions, which limits payment of benefits to 24 months for specified conditions.

Zall administratively appealed Standard's determination. During its evaluation of the appeal, Standard consulted Michelle Alpert, M.D.  Zall did not request, and Standard did not provide to Zall, a copy of Dr. Alpert's written report before Standard finalized its determination on appeal to uphold closure of Zall's claim.

Zall filed suit under ERISA, contending that Standard's decision to terminate his long-term disability benefits was arbitrary and capricious. Zall raised three main arguments:  (1) Standard denied him a full and fair review by failing to provide him a copy of Dr. Alpert's report or the opportunity to respond to it before terminating his benefits; (2) Standard's conclusion that Dr. Zall did not have either cervical radiculopathy or cervical herniated disc with neurological abnormalities was not rationally supported by the medical evidence; and (3) Standard waived its right to terminate Zall's benefits by paying him benefits for more than six years after it claimed his benefits should have ended. In support of his first argument, Zall relied on new claims-procedure regulations promulgated by the Department of Labor that required the claims administrator to provide the claimant with documents developed or considered during the administrative appeal before rendering its final determination.  The new regulations went into effect on January 18, 2017.

This court disagreed with Zall on all counts. Dkt. 24 (Dec. 27, 2021 Opinion and Order). With respect to Dr. Alpert's report, this court agreed with Standard that the new ERISA regulation on which Zall rested his argument applied to claims for benefits "filed under a plan

after April 1, 2018." Since Zall filed his claim for disability in 2013, this court found that the new rules did not apply. *Id*. at 13.

On appeal, the Seventh Circuit agreed with Zall on the procedural issue, holding that the 2018 version of the ERISA regulation applied to Zall's claim. *Zall*, 58 F. 4th at 292-93. Specifically, the court found that result dictated by the plain text of subsection (p) of the regulation, an argument that Zall had not made before this court. *Id*. The court did not address the merits of Standard's claim determination, ordering instead that the case be remanded to Standard for a full and fair review of his claim. *Zall*, 58 F. 4th at 298. After this court entered the remand order, Zall filed the instant motion for attorney's fees in the amount of $67,985 and costs in the amount of $3,402.22. Dkt. 35. (On reply, he has increased his attorney fee request to $69,907.50, to account for his attorneys' work on the reply to the fee petition.)

On May 5, 2023, Standard approved Zall's claim, finding that he had been eligible for LTD benefits under the policy from the time his claim closed and ongoing through the present. Dkt. 53-1.

## ANALYSIS

This Court has discretion to award Zall reasonable attorney's fees and costs under 29 U.S.C. § 1132(g)(1). To recover his fees, Zall must satisfy three requirements. First, he must show that he achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Insurance Company*, 560 U.S. 242, 255 (2010) (internal citation omitted). Second, if he clears that threshold, then he must convince the court that an award of fees is appropriate. *Pakovich v. Verizon OTD Plan*, 653 F.3d 488, 494 (7th Cir. 2011). Third, and finally, he must show that the amount of fees and costs he seeks are reasonable.

## I. Eligibility for Fees

A party achieves some success on the merits "if the court can fairly call the outcome of the litigation some success on the merits without conducting a "lengthy inquir[y] into the question whether a particular party's success was 'substantial' or occurred on a 'central issue.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (quoting *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 688, n. 9 (1983)).   A claimant does not satisfy that requirement by achieving "trivial success on the merits" or a "purely procedural victor[y]." *Id.*

Standard argues that Zall is not eligible for *any* fees because he achieved only a procedural victory, noting that the Seventh Circuit never addressed the merits of Zall's claim but merely remanded the case for a full and fair review.   This argument is unpersuasive.   Zall's success in establishing that Standard failed to afford him a full and fair review by violating an ERISA rule was as much a "merits issue" as his ultimate right to benefits under the plan.   *See Olds v. Ret. Plan of Int'l Paper Co.*, No. CIV.A. 09-0192-WS-N, 2011 WL 2160264, at *2 (S.D. Ala. June 1, 2011) ("[A] plaintiff has experienced 'some degree of success on the merits' when he presents a claim that the defendant violated his rights and the court rules that the defendant did violate those rights.").   What is more, while this motion was pending, Standard announced that it was reversing its decision and reinstating Zall's long term disability benefits.   Dkt. 53-1.   Because Zall's victory was more than "purely procedural," the court finds the "success on the merits" requirement is met.

## II. Entitlement to Fees

The next question is whether the court should award fees. The Seventh Circuit uses two alternative tests for deciding this question in ERISA cases, the first of which involves consideration of five factors: (1) the degree of the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy personally an award of attorney fees; (3) whether an award of attorney fees against the offending party would deter other persons acting under similar circumstances; (4) the amount of benefit conferred on members of the plan as a whole; and (5) the relative merits of the parties' positions. *Raybourne v. Cigna Life Ins. Co.*, 700 F.3d 1076, 1089-90 (7th Cir. 2012). The second test focuses on whether the losing party's position was "substantially justified." *Id*. at 1090. "[T]he two tests essentially pose the same question: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" *Id*. The court will use the five-factor test as it "more accurately articulates the various equitable factors appropriate to consider in determining whether attorney fees are appropriate, although the result would be the same under the second test as well for much the same reasons." *Univ. of Wis. Hosp. & Clinics, Inc. v. Aetna Life Ins. Co.*, 24 F. Supp. 3d 808, 817 (W.D. Wis. 2014) (quoting *Freeland v. Unum Life Ins. Co. of Am.*, No. 11-cv-503, 2013 WL 4482995, at *17 (W.D. Wis. Aug. 19, 2013)).

The court considers the first and fifth factors together, as they both examine the underlying merits of the parties' positions. The court is persuaded that these factors weigh in favor a fee award for Zall. Standard may not have acted maliciously in declining to provide him with a copy of Dr. Alpert's report, but at the same time, it didn't have sound reasons for withholding it. As the Seventh Circuit found, Standard's obligation to provide Zall with a copy

5

of the report was plain from the text of the Department of Labor's 2018 amendments.  As a claims administrator, it was incumbent upon Standard to keep abreast of the newest regulations and to understand how they applied to claims like Zall's.  Further, as Zall points out, providing him with a copy of Alpert's report would have been consistent with the procedures that Standard was already following for claims filed after April 1, 2018.

In support of its contention that its position was substantially justified, Standard argues that before the Seventh Circuit's ruling in this case, no federal circuit court of appeals had held that the 2018 amended ERISA regulation applied to claims, like Zall's, that were filed before the regulation's 2018 applicability date, and it cites cases that provided some support for its position about the applicability of the 2018 regulation to Zall's claim.  Standard further points out that Zall never argued in his briefing in this court that subsection (p) required that the 2018 regulation be applied to his case.

The court agrees that, from a litigation standpoint, Standard may have had a good faith basis for its position.  But the substantial justification inquiry encompasses not just Standard's litigation conduct, but also its behavior before the suit started. *Temme*, 762 F.3d at 551.  As the Seventh Circuit observed, "it would have been easy for Standard to comply with the new procedural requirement without any prejudice to its interests." *Zall*, 58 F. 4th at 296.  Given its fiduciary relationship with Zall, the plain language of the regulation, its duty to provide a full and fair review, and the ease with which it could have complied with the regulation, the court finds these factors weigh in Zall's favor.

The remaining factors also weigh in favor of awarding Zall fees. Standard acknowledges it has the resources to pay a fee award. And an award of attorney fees here may deter Standard

6

from similar errors in the future, which will confer a benefit on plan participants. The court will award fees.

## III. Amount of Fees

Next, the court must determine the amount of attorney fees. The court uses a lodestar method to determine a reasonable fee, "multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Zall seeks $69,907.50 in attorney fees for the 220 hours that her attorneys spent working on this case, including on the reply to this motion.  Standard objects to Zall's fee request on numerous grounds.

### A. Fees for Work on Appeal

Zall seeks $33,404 in fees for work performed in the Seventh Circuit. Standard argues that Zall should have asked the Seventh Circuit to award these fees. But other than citing cases in which the Seventh Circuit explicitly evaluated a claimant's request for fees and costs incurred on appeal, Standard doesn't present any authority for its contention that a plaintiff who obtains a remand *must* petition for fees in the Seventh Circuit rather than the district court.  Zall, on the other hand, presents authority holding that "a petition on entitlement to appellate attorneys fees may be filed in either the district court or the court of appeals." *Ekanem v. Health & Hosp. Corp.*, 778 F.2d 1254, 1257 (7th Cir. 1985) (citing cases).  Based on this authority, the court will consider the fees incurred by Zall's attorneys for appellate work.

**B.  Rates**

Zall seeks the following hourly rates for his attorneys:  $550 for William Parsons, a shareholder; $450 for Danielle Schroder, a shareholder; $375 for Jessa Victor, a sixth-year associate; $275 for Brook Tylka and Naomi Swain, third-year associates; and between $100 to $125 an hour for work performed by three law clerks attending law school.  The Seventh Circuit "define[s] a reasonable hourly rate as one that is 'derived from the market rate for the services rendered' [and] presume[s] that an attorney's actual billing rate for similar litigation is appropriate to use as the market rate." *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)).  "[O]nce an attorney provides evidence establishing [the] market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded." *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007). Zall bears the burden of establishing the market rate; if he fails to carry that burden, the court can independently determine the appropriate rate.  *Montanez v. Simon*, 755 F.3d 547, 553 (7th Cir. 2014).

Zall's motion is supported by declarations from his attorneys and with decisions from federal district courts and arbitrators in Wisconsin approving fee awards at similar rates. Dkt. 37-39. The declarations provide sufficient evidence of the experience of the attorneys and law clerks who worked on the case and state that the requested hourly rates sought are the actual rates counsel use in hourly fee arrangements, with the exception of Attorney Parsons, who asserts that his currently hourly rate is $625 an hour.  Zall also submitted declarations from other attorneys who perform similar work, showing that the requested rates are in line with what other practitioners normally charge for similar services in Wisconsin. Dkts. 40-41.

The best evidence "of an attorney's market rate is his or her actual billing rate for similar work." *Johnson v. GDF, Inc.*, 668 F.3d 927, 933 (7th Cir. 2012) (citing *Pickett*, 664 F.3d at

8

639-40).  Zall's evidence is sufficient to establish that the rates sought by his attorneys in this case are equal to or lower than the rates they command in the Wisconsin market from paying clients for similar work.  Although Standard points out that Zall's requested rates for Attorneys Parsons, Victor, and Schroeder are $50-$75 higher than they were than two or three years ago, the court finds these increases reasonable in light of current inflation rates and the increased experience of the attorneys.

Standard argues that counsel's market rates should be capped at what Zall actually agreed to pay them when he hired them almost 10 years ago.  As Standard points out, Zall signed a fee agreement in March 2014 in which he agreed to an hourly rate of $350 for Attorney Parsons, and $225 for any other attorney.  *See* Dkt. 48-1.  But the Seventh Circuit allows district courts "to use either current rates or past rates with interest when calculating the lodestar amount," explaining that either method provides an adjustment for delay in payment, which is an appropriate factor in determining a reasonable attorney's fee.  *Mathur v. Bd. of Trustees of SIU*, 317 F.3d 738, 744-45 (7th Cir. 2003). Standard hasn't proposed an alternative calculation using past rates with interest, so the court will use the 2023 rates submitted by Zall in calculating the lodestar amount.

### C.  Reasonableness of Hours

Standard objects to certain categories of work billed by Zall's attorneys as inadequately documented, unnecessary, duplicative, or excessive.  Specifically, it objects to:  37.4 hours billed by law clerks for unspecified "disability insurance issues" and "basic ERISA concepts"; 25.4 hours billed for preparing Zall's submissions in this court; 3.5 hours for non-specific "case status meetings" during the pendency of the case; 0.6 hours billed by Attorney Schroeder for non-

specific emails; and 4.8 hours billed by Attorney Tylka for travel time to Chicago for oral argument. Dkt. 49, at 19-24.

Having considered Standard's objections, Zall's responses thereto, and counsel's billing records, the court overrules Standard's objections. Although some of the time entries are vague, when considered in context they are sufficiently specific to allow the court to conclude that they were reasonably expended on this case. The court finds no obvious duplication of effort or overbilling. To the contrary, the combined time that Zall's attorneys spent in conferences, communicating with Zall, and drafting and revising proposed findings of fact, briefs, and replies was reasonable and in line with awards in other ERISA cases. Further, the firm's use of law clerks and associate attorneys helped keep the fees down. Finally, "travel time and expenses are compensable." *Stark v. PPM Am., Inc.*, 354 F.3d 666, 674 (7th Cir. 2004).

### D. Lodestar Reduction

However, the court agrees with Standard that a reduction in the lodestar is warranted to reflect that Zall ultimately succeeded based on a distinct procedural issue that was not the focus of his arguments in this court. *See Stark*, 354 F.3d at 674 (hours claimed can be reduced by hours spent litigating claims on which the party did not succeed to the extent they were distinct from claims on which the party did succeed). Although Zall argued in this court that Standard deprived him of a full and fair review when it denied his appeal without providing him with Dr. Alpert's report, he did not refer to subsection (p) or make any arguments concerning the plain language of the 2018 amendments to the ERISA regulations. His assertion that the new rules applied to Zall's claim was relegated to a footnote in his brief. Dkt. 15, at 7, n. 4. The focus of

his briefs was the merits of Standard's medical determination, which this court decided against

him.

On appeal, Zall expanded upon and ultimately succeeded on his regulatory argument.

Based on its conclusion that Zall's claim should be remanded for new administrative

proceedings, the court of appeals did not review Standard's substantive decision. As Zall points

out, the court noted that it was unable to say whether Standard acted arbitrarily and capriciously

in terminating Zall's benefits because of the procedural violation. *Zall*, 58 F. 4th at 297.  And as

noted, Zall was ultimately successful in getting his benefits reinstated. "When a plaintiff has

obtained an excellent result, his attorney should recover a fully compensable fee (i.e., the

modified lodestar amount), and the fee 'should not be reduced simply because the plaintiff failed

to prevail on every contention raised in the lawsuit.'"  *Spegon*, 175 F.3d at 557–58 (quoting

*Hensley*, 461 U.S. at 435).

Still, Zall's procedural challenge was based on a legal theory that was entirely distinct

from his substantive challenge.  It was a sleeper issue until he got to the court of appeals.  Under

these circumstances, the court concludes that it is accurate and fair to describe Zall's success, as

measured against the time spent, as partial, such that a reduction in the lodestar is warranted.

Accordingly, the court exercises its discretion and reduces the lodestar by 40 percent.  The court

will award attorney fees in the amount of $41,944.50.


## IV.  Costs

Zall requests a total of $3,402.22 in litigation-related costs. Dkt. 37-1. Standard argues

that $2,495.22 of these are unrecoverable, either because Zall was required to seek them from

the Seventh Circuit, or because they are not allowable under 28 U.S.C. § 1920. Zall doesn't

respond to these arguments on reply, conceding the point.  The court will award costs only in the amount of $907.

## ORDER

IT IS ORDERED THAT:

1.    Plaintiff Eric Zall's unopposed motion for leave to file notice of supplemental information, dkt. 52, is GRANTED.

2.    Plaintiff's motion for an award of attorney fees and costs, dkt. 35, is GRANTED IN PART and DENIED IN PART, as explained above.

3.    Plaintiff's bill of costs, Dkt. 37-1, is GRANTED IN PART and DENIED IN PART. Costs are awarded in the amount of $907.

4.    Plaintiff is awarded attorney fees and costs in the total amount of $42,851.50 .

5.    The clerk of court is directed to enter judgment to reflect the award of attorney fees and costs.

Entered this  29th day of September, 2023.

BY THE COURT:

/s/

_____
STEPHEN L. CROCKER
Magistrate Judge